Case 3:07-cv-01850-P   Document 1   Filed 11/06/07   Page 1 of 11   PageID 1



ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANUEL A. BENAVIDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF IRVING, TEXAS and | § | CIVIL ACTION NO. 1850 - P |
| HERBERT A. GEARS, THOMAS D. | § | |
| SPINK, BETH VAN DUYNE, ALLAN E. | § | |
| MEAGHER, LEWIS PATRICK, ROSE | § | |
| CANNADAY, RICK STOPFER, SAM | § | |
| SMITH, and JOE PHILIPP, in their | § | |
| official capacities, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965

Plaintiff Manuel A. Benavidez ("Benavidez") files this Complaint for Declaratory and Injunctive Relief against defendants The City of Irving, Texas (the "City" or "Irving"); Herbert A. Gears, in his official capacity as Mayor of Irving ("Mayor Gears"); City Council Members Thomas D. Spink ("Spink"), Elizabeth (Beth) Van Duyne ("Van Duyne"), Allan E. Meagher ("Meagher"), Lewis Patrick ("Patrick"), Rose Cannaday ("Cannaday"), Rick Stopper ("Stopper"), Sam Smith ("Smith"), and Joe Philipp ("Philipp"), each in their official capacities as members of the Irving City Council (the "City Council"), on personal knowledge as to all allegations concerning his activities and on information and belief as to all remaining allegations.

### I.

### PRELIMINARY STATEMENT

Irving conducts an at-large election for each of its eight City Council members and its Mayor, who also votes as a member of the City Council (the "Electoral System"). The purpose and effect of this Electoral System is that every member of Irving's City Council and the Mayor

respond to the concerns of the same predominately white voters that dominate the at-large electorate in Irving and therefore determine the winning candidate for all positions.

This at-large system is intended to deny representation to the substantial minority of Irving's voters who are Hispanic–39.8% of Irving's population by an authoritative 2005 estimate. Courts have repeatedly struck down such at-large systems for electing the members of a city council (or its equivalent) in cities with significant minority populations, and have required those cities to replace at-large voting systems with single-member district systems. Plaintiff, himself a victim of this intentionally pernicious system, files this lawsuit in order to ensure that Irving's substantial Hispanic minority has the opportunity to select representation of its choice and to end Irving's continuing violations of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, *et seq*.

## II.

## PARTIES

A.  **Plaintiff**

Plaintiff Benavidez is a Hispanic individual residing at 2108 Meadow Glen, Irving, Texas, 75060.

B.  **Defendants**

1. The City is a municipal corporation located in Dallas County, Texas, and may be served by serving Mayor Gears.

2. Mayor Gears is a resident of Irving and may be served with process at 3716 Santiago Court, Apt. 1206, Irving, Texas 75062.

3. Spink is a resident of Irving and may be served with process at 1319 N. Irving Heights Drive, Irving, Texas 75061.

4. Van Duyne is a resident of Irving and may be served with process at 2123 Shumard Oak Lane, Irving, Texas 75063.

5. Meagher is a resident of Irving and may be served with process at 915 Colony Ridge Court, Irving, Texas 75061.

6. Patrick is a resident of Irving and may be served with process at 1416 Fulton Drive, Irving, Texas 75060.

7. Cannaday is a resident of Irving and may be served with process at 104 W. Northgate Drive, Irving, Texas 75062.

8. Stopper is a resident of Irving and may be served with process at 9624 Santa Fe Circle, Irving, Texas 75063.

9. Smith is a resident of Irving and may be served with process at 1601 Oak Meadow Drive, Irving, Texas 75061.

10. Philipp is a resident of Irving and may be served with process at 3713 Guadalajara Ct., Irving, Texas 75062.

## III.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1331 and Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, this Court has jurisdiction over this action.

12. The Court has personal jurisdiction over defendants, and venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this District.

## IV.

## FACTS

**A.    Plaintiff:  A Long-Time Resident Of Irving  And a Victim of Irving's Illegal Electoral System.**

13.    Plaintiff Benavides, a Hispanic, is a 36-year resident of Irving who moved to the city in 1971. Benevides resides in District 4, in which "Place 4" City Council members must reside. During this entire time, Benavides has been an employee of American Airlines. Benevides is an outgoing individual with wide personal contacts in Irving and has a strong interest in community and civic affairs. Benavides is also an active participant in the political process. These qualities make Benavides a natural candidate to run, and run successfully, for City Council from a predominantly Hispanic voting district. However, electoral success is highly unlikely in the citywide voting system in Irving where the White voting majority uniformly votes as a bloc and thereby prevents Hispanic candidates from being elected. In fact, Benavides ran in 2000 and again in 2006 for a position on the Irving Independent School District Board of Trustees, but lost each time despite the presence of a substantial Hispanic population in his district. Irving elects its Board of Trustees citywide, in a system similar to that used for electing the City Council. Bloc voting by White voters in citywide Irving elections usually results in the defeat of minority candidates.

**B.    Irving:  A City In Transition**

14.    Irving was founded in 1903, and likely named after the famous American author, Washington Irving. Irving was formally incorporated in 1914. Irving is notable as the location of the University of Dallas, which opened in 1956, and Texas Stadium, which opened in 1971.

15.    Irving operates under a "home-rule, council-manager" form of government. The individual defendants, including the Mayor, currently make up the nine-member City Council.

16. By 1925, Irving still had only 357 residents. Rapid population growth, however, began in the 1930s, and by the early 1960s, Irving had about 45,000 residents. Irving's overall population reached 155,037 in 1990, and 191,615 in 2000. As of 2005, Irving had an estimated population of 212,262.

17. As rapid as Irving's overall population growth has been, its Hispanic population has grown even faster. The 2000 census reflected that Irving's Hispanic population of 59,838 comprised 31.23 percent of the total population of Irving. Hispanics were also 27.21 percent of its voting age population. This population continues to grow rapidly. The 2005 American Community Survey estimated that Hispanic residents numbered 84,638 out of the total population of 212,262, or 39.87%. Clearly, Irving's ethnic composition has changed rapidly. Unfortunately, this social change has not been reflected on the City Council.

C.  **Irving's Electoral System**

18. Irving elects nine city council members, designated as Places 1 to 8, plus the Mayor. Since City Council members from Places 1 to 5 putatively represent their districts, each must reside in one of Irving's five districts. For example, Council Member Spink is elected from Place 1, which means that he must reside in District 1, in the city's southeast corner. Spink, however, like all other City Council members, is elected citywide. Places 6 to 8 are also elected citywide, but persons running for these positions are not subject to any residency requirement beyond the requirement that they reside somewhere in Irving. In addition, the Mayor is elected citywide. Thus, all members of Irving's City Council are elected citywide, and none need to be responsive to the specific concerns of the residents of any particular districts. Instead, to get elected, each must successfully appeal to the same citywide electorate presently dominated by White voters. Moreover, Irving requires run-off elections when no candidate receives a majority of the vote. This run-off system makes it virtually impossible for an Hispanic candidate to get

"lucky" and be elected over candidate(s) favored by the white electorate in an election with several candidates.

### D. The Discriminatory Effects Of Irving's Electoral System

19. Irving's current electoral system is based on the 2000 census, when Irving's voting age population was about 27 percent Hispanic. Based on this percentage, one might expect to find two or even three Hispanic City Council members, but there are none. In fact, the member elected from Place 1, Spink, is among the most aggressive opponents of Hispanic immigration, even though Place 1's district had, at 53.73 percent, the highest proportion of Hispanic residents. In fact, in the last ten years only one council member, Fran Bonilla, has been Hispanic, and, of course, she had to obtain significant White support to be elected.

20. This lack of success suggests that whites vote as a bloc to defeat any candidate preferred by Hispanic voters. Inspection of demographic maps of Irving based on the 2000 census shows that Hispanics in Irving are concentrated in the southern half of the city, and especially the southeast area. As such, the Hispanic vote is geographically compact. In short, Hispanics are sufficiently numerous and geographically compact that a properly apportioned single-member district plan can be drawn in which Hispanics would form a majority of the population and voting age population in at least two of nine potential districts.

21. In addition, the Electoral System disadvantages Hispanic candidates because due to ethnic social patterns, it is more difficult for Hispanic voters to solicit white voters than it is for White candidates to do so. Further, Hispanic voters suffer from the effects of past discrimination and have lower average incomes and less education, which also disadvantage the candidates favored by Hispanic voters. In particular, it is more difficult for Hispanic candidates to raise the campaign funds necessary to compete effectively in citywide elections.

E. **Irving's 2000 Charter Review Committee: Concerned Citizens And Hispanic Leaders Try, But Fail, To Reach An Amicable Solution.**

22. In 2004, the City Council formed a 21 member Charter Review Committee (the "Committee") to review the City Charter and propose changes to it. By that time, concerned citizens residing in Irving, including members of the Hispanic community, recognized that the City faced an untenable situation – the City had a substantial and burgeoning Hispanic population, but Hispanics lacked any representation on the City Council. In addition, other minorities similarly lacked representation of their choice. These citizens believed that the formation of the Committee presented an opportunity to propose changes to the Charter that would permit Hispanic and other minority voters to vote for the representation of their choice. Specifically, the concerned citizens proposed a compromise by which the district boundaries would not change, but Places 1 to 5 would be elected by the resident voters of each respective district (rather than at-large), while Places 6 to 8 and the Mayor would continue to be elected citywide. Under this proposal, the district for Place 1 would have a majority Hispanic population, while the districts for Places 4 and 5 would have majority-minority populations, but not Hispanic majorities. This was a moderate proposal and less than Plaintiff and the Hispanic community will obtain by commencing this suit. Nevertheless, the Committee rejected this proposal to reform the Electoral System, and City Council voted to retain the current, intentionally discriminatory Electoral System.

F. **Without Court Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

23. Unless this Court directs the City to design a single member electoral system, the current discriminatory Electoral System will continue. Members of Irving's Hispanic community have tried to "work within the system" to change Irving's Electoral System to permit the Hispanic community in Irving to obtain representation of its choice. In 2004, representatives

PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965                                  Page 7

of the Hispanic community and other concerned citizens of the Hispanic community gave the Committee described above an opportunity to amicably resolve this dispute. Irving could have begun moving toward a discrimination free Electoral System. Both the Committee and the City Council declined to take that opportunity. Instead, the Committee rejected the compromise, thus necessitating the present suit.

## V.

## CLAIM

### A. Violation Of Section 2 Of The Voting Rights Act Of 1965

24. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

25. Section 2 of the Voting Rights Act of 1965, as amended, prohibits any standard, practice, or procedure that results in the denial or abridgement of the right of minorities to vote. Specifically, it forbids any electoral system that denies Hispanics an equal opportunity to that afforded to other members of the electorate to elect representatives of their choice.

26. Irving's at-large Electoral System for electing its City Council dilutes Hispanic voting strength and is not equally open to participation by Irving's Hispanic voters. Further, the Electoral System results in Hispanics having less opportunity than some other voters to participate in the electoral process and to elect representatives of their choice.

27. Unless enjoined by this Court, Irving's at-large Electoral System will remain in force, and Irving will therefore continue to violate Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the City Council using an at-large Electoral system.

## VI.

## JURY DEMAND

28. Plaintiff hereby demands a trial by jury of all issues so triable.

## VII.

## REQUEST FOR RELIEF

WHEREFORE Plaintiff requests that this Court enter an order:

(1) Declaring that the at-large method of electing members to the Irving City Council violates Section 2 of the Voting Rights Act;

(2) Enjoining Irving, its agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Irving under the at-large method;

(3) Ordering Irving to devise an election plan, and implementation schedule for that plan, that remedies the violation of Section 2. If Irving fails to devise such a plan, the Court should order into effect a new election plan of its own designed to remedy the violation of Section 2 and order elections to be held pursuant to that plan as promptly as possible;

(4) An award of reasonable attorney's fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 42 U.S.C. § 1973l(e) and any other applicable statute;

(5) Costs of Court; and

(6) Any other relief, at law or in equity, to which Plaintiff may be entitled and which this Court deems just and proper.

Respectfully submitted,

**BICKEL & BREWER STOREFRONT, P.L.L.C.**

By: _____
William A. Brewer III
State Bar No. 2967035
Michael L. Smith
State Bar No. 24027989
Michael Veeser
State Bar No. 24042088

1717 Main Street
Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF
MANUEL BENAVIDEZ**

5145336.4
8001-01

%JS 44 (Rev. 10/06)

# CIVIL COVER SHEET

RECEIVED NOV 6 2007 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

3:07 CV 1850-P ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Manuel Benavidez

### DEFENDANTS
The City of Irving, Texas; all Irving City Council members.

(b) County of Residence of First Listed Plaintiff __Dallas__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant __Dallas__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Bickel & Brewer, 1717 Main Street, Suite 4800, Dallas, Texas 75201
(214) 653-4000

Attorneys (If Known)
Charles Anderson, Irving City Atty, 825 West Irving Blv, Irving, TX 75060

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☒ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Suit challenging at large electoral system of Irving's City Council under the Voting Rights Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____