

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 3 2007

CLERK, U.S. DISTRICT COURT
By_____
Deputy

MANUEL A. BENAVIDEZ, §
§
Plaintiff, §
§
v. §
§
THE CITY OF IRVING, TEXAS and §
HERBERT A. GEARS, THOMAS D. §
SPINK, ELIZABETH (BETH) VAN §
DUYNE, ALLAN E. MEAGHER, LEWIS §
PATRICK, ROSE CANNADAY, RICK §
STOPFER, SAM SMITH, and JOE §
PHILIPP, in their official capacities, §
§
Defendants. §

CIVIL ACTION NO. 307 CV 1850-P

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965

Plaintiff Manuel A. Benavidez ("Benavidez") files this First Amended Complaint for Declaratory and Injunctive Relief against defendants The City of Irving, Texas (the "City" or "Irving"); Herbert A. Gears, in his official capacity as Mayor of Irving ("Mayor Gears"); City Council Members Thomas D. Spink ("Spink"), Elizabeth (Beth) Van Duyne ("Van Duyne"), Allan E. Meagher ("Meagher"), Lewis Patrick ("Patrick"), Rose Cannaday ("Cannaday"), Rick Stopfer ("Stopfer"), Sam Smith ("Smith"), and Joe Philipp ("Philipp"), each in their official capacities as members of the Irving City Council (the "City Council"), on personal knowledge as to all allegations concerning his activities and on information and belief as to all remaining allegations.

## I.

## PRELIMINARY STATEMENT

Irving conducts an at-large election for each of its eight City Council members and its Mayor, who also votes as a member of the City Council (the "Electoral System"). The purpose

and effect of this Electoral System is that every member of Irving's City Council and the Mayor respond to the concerns of the same predominately white voters that dominate the at-large electorate in Irving and therefore determine the winning candidate for all positions.

This at-large system is intended to deny representation to the substantial minority of Irving's voters who are Hispanic–39.8% of Irving's population by an authoritative 2005 estimate. Courts have repeatedly struck down such at-large systems for electing the members of a city council (or its equivalent) in cities with significant minority populations, and have required those cities to replace at-large voting systems with single-member district systems. Plaintiff, himself a victim of this intentionally pernicious system, files this lawsuit in order to ensure that Irving's substantial Hispanic minority has the opportunity to select representation of its choice and to end Irving's continuing violations of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, *et seq.*

## II.

## PARTIES

**A.**   **Plaintiff**

Plaintiff Benavidez is a Hispanic individual residing at 2108 Meadow Glen, Irving, Texas, 75060.

**B.**   **Defendants**

1.     The City is a municipal corporation located in Dallas County, Texas, and may be served by serving Mayor Gears.

2.     Mayor Gears is a resident of Irving and may be served with process at 3716 Santiago Court, Apt. 1206, Irving, Texas 75062.

3.     Spink is a resident of Irving and may be served with process at 1319 N. Irving Heights Drive, Irving, Texas 75061.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965                                    Page 2

4.      Van Duyne is a resident of Irving and  may be served with process at 2123 Shumard Oak Lane, Irving, Texas  75063.

5.      Meagher is a resident of Irving and may be served with process at 915 Colony Ridge Court, Irving, Texas  75061.

6.      Patrick is a resident of Irving and may be served with process at 1416 Fulton Drive, Irving, Texas  75060.

7.      Cannaday is a resident of Irving and may be served with process at 104 W. Northgate Drive, Irving, Texas  75062.

8.      Stopfer is a resident of Irving and may be served with process at 9624 Santa Fe Circle, Irving, Texas  75063.

9.      Smith is a resident of Irving and may be served with process at 1601 Oak Meadow Drive, Irving, Texas  75061.

10.     Philipp is a resident of Irving and may be served with process at 3713 Guadalajara Ct., Irving, Texas  75062.

### III.

### JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. § 1331 and Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, this Court has jurisdiction over this action.

12.     The Court has personal jurisdiction over defendants, and venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this District.

**IV.**

**FACTS**

**A.    Plaintiff:   A Long-Time Resident Of Irving   And a Victim of Irving's Illegal Electoral System.**

13.    Plaintiff Benavidez, a Hispanic, is a 36-year resident of Irving who moved to the city in 1971.  Benevides resides in District 4, in which "Place 4" City Council members must reside.   During this entire time, Benavidez has been an employee of American Airlines. Benevides is an outgoing individual with wide personal contacts in Irving and has a strong interest in community and civic affairs.  Benavidez is also an active participant in the political process.  These qualities make Benevides a natural candidate to run, and run successfully, for City Council from a predominantly Hispanic voting district.   However, electoral success is highly unlikely in the citywide voting system in Irving where the white voting majority uniformly votes as a bloc and thereby prevents Hispanic candidates from being elected.  In fact, Benavidez ran in 2000 and again in 2006 for a position on the Irving Independent School District Board of Trustees, but lost each time despite the presence of a substantial Hispanic population in his district.  Irving elects its Board of Trustees citywide, in a system similar to that used for electing the City Council.  Bloc voting by white voters in citywide Irving elections usually results in the defeat of minority candidates.

**B.    Irving:  A City In Transition**

14.    Irving was founded in 1903, and likely named after the famous American author, Washington Irving.  Irving was formally incorporated in 1914.  Irving is notable as the location of the University of Dallas, which opened in 1956, and Texas Stadium, which opened in 1971.

15.    Irving operates under a "home-rule, council-manager" form of government.  The individual defendants, including the Mayor, currently make up the nine-member City Council.

16.     By 1925, Irving still had only 357 residents. Rapid population growth, however, began in the 1930s, and by the early 1960s, Irving had about 45,000 residents. Irving's overall population reached 155,037 in 1990, and 191,615 in 2000. As of 2005, Irving had an estimated population of 212,262.

17.     As rapid as Irving's overall population growth has been, its Hispanic population has grown even faster. The 2000 census reflected that Irving's Hispanic population of 59,838 comprised 31.23 percent of the total population of Irving. Hispanics were also 27.21 percent of its voting age population. This population continues to grow rapidly. The 2005 American Community Survey estimated that Hispanic residents numbered 84,638 out of the total population of 212,262, or 39.87%. Clearly, Irving's ethnic composition has changed rapidly. Unfortunately, this social change has not been reflected on the City Council.

## C.     Irving's Electoral System

18.     Irving elects nine city council members, designated as Places 1 to 8, plus the Mayor. Since City Council members from Places 1 to 5 putatively represent their districts, each must reside in one of Irving's five districts. For example, Council Member Spink is elected from Place 1, which means that he must reside in District 1, in the city's southeast corner. Spink, however, like all other City Council members, is elected citywide. Places 6 to 8 are also elected citywide, but persons running for these positions are not subject to any residency requirement beyond the requirement that they reside somewhere in Irving. In addition, the Mayor is elected citywide. Thus, all members of Irving's City Council are elected citywide, and none need to be responsive to the specific concerns of the residents of any particular districts. Instead, to get elected, each must successfully appeal to the same citywide electorate presently dominated by white voters. Moreover, Irving requires run-off elections when no candidate receives a majority of the vote. This run-off system makes it virtually impossible for a Hispanic candidate to get

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965                              Page 5

"lucky" and be elected over candidate(s) favored by the white electorate in an election with several candidates.

**D.**     **The Discriminatory Effects Of Irving's Electoral System**

19.     Irving's current electoral system is based on the 2000 census, when Irving's voting age population was about 27 percent Hispanic. Based on this percentage, one might expect to find two or even three Hispanic City Council members, but there are none. Incredibly, the member elected from Place 1, Spink, is among the most aggressive opponents of Hispanic immigration, even though Place 1's district had, at 53.73 percent, the highest proportion of Hispanic residents. In fact, in the last ten years only one City Council member has been Hispanic, and, of course, that candidate had to obtain significant white support to be elected.

20.     This lack of success suggests that whites vote as a bloc to defeat any candidate preferred by Hispanic voters. Inspection of demographic maps of Irving based on the 2000 census shows that Hispanics in Irving are concentrated in the southern half of the city, and especially the southeast area. As such, the Hispanic vote is geographically compact. In short, Hispanics are sufficiently numerous and geographically compact that a properly apportioned single-member district plan can be drawn in which Hispanics would form a majority of the population and voting age population in at least two of nine potential districts.

21.     In addition, the Electoral System disadvantages Hispanic candidates because due to ethnic social patterns, it is more difficult for Hispanic voters to solicit white voters than it is for white candidates to do so. Further, Hispanic voters suffer from the effects of past discrimination and have lower average incomes and less education, which also disadvantage the candidates favored by Hispanic voters. In particular, it is more difficult for Hispanic candidates to raise the campaign funds necessary to compete effectively in citywide elections.

**E.    Irving's 2000 Charter Review Committee: Concerned Citizens And Hispanic Leaders Try, But Fail, To Reach An Amicable Solution.**

22.    In 2004, the City Council formed a 21 member Charter Review Committee (the "Committee") to review the City Charter and propose changes to it.  By that time, concerned citizens residing in Irving, including members of the Hispanic community, recognized that the City faced an untenable situation – the City had a substantial and burgeoning Hispanic population, but Hispanics lacked any representation on the City Council.  In addition, other minorities similarly lacked representation of their choice.  These citizens believed that the formation of the Committee presented an opportunity to propose changes to the Charter that would permit Hispanic and other minority voters to vote for the representation of their choice. Specifically, the concerned citizens proposed a compromise by which the district boundaries would not change, but Places 1 to 5 would be elected by the resident voters of each respective district (rather than at-large), while Places 6 to 8 and the Mayor would continue to be elected citywide.  Under this proposal, the district for Place 1 would have a majority Hispanic population, while the districts for Places 4 and 5 would have majority-minority populations, but not Hispanic majorities.  This was a moderate proposal and less than Plaintiff and the Hispanic community will obtain by commencing this suit.  Nevertheless, the Committee rejected this proposal to reform the Electoral System, and City Council voted to retain the current, intentionally discriminatory Electoral System.

**F.    Without Court Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

23.    Unless this Court directs the City to design a single member electoral system, the current discriminatory Electoral System will continue.  Members of Irving's Hispanic community have tried to "work within the system" to change Irving's Electoral System to permit the Hispanic community in Irving to obtain representation of its choice.  In 2004, representatives

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965**                                    Page 7

of the Hispanic community and other concerned citizens of the Hispanic community gave the Committee described above an opportunity to amicably resolve this dispute. Irving could have begun moving toward a discrimination free Electoral System. Both the Committee and the City Council declined to take that opportunity. Instead, the Committee rejected the compromise, thus necessitating the present suit.

## V.

## CLAIM

**A.    Violation Of Section 2 Of The Voting Rights Act Of 1965**

24.     Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

25.     Section 2 of the Voting Rights Act of 1965, as amended, prohibits any standard, practice, or procedure that results in the denial or abridgement of the right of minorities to vote. Specifically, it forbids any electoral system that denies Hispanics an equal opportunity to that afforded to other members of the electorate to elect representatives of their choice.

26.     Irving's at-large Electoral System for electing its City Council dilutes Hispanic voting strength and is not equally open to participation by Irving's Hispanic voters. Further, the Electoral System results in Hispanics having less opportunity than some other voters to participate in the electoral process and to elect representatives of their choice.

27.     Unless enjoined by this Court, Irving's at-large Electoral System will remain in force, and Irving will therefore continue to violate Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the City Council using an at-large Electoral system.

## VI.

## <u>JURY DEMAND</u>

28.     Plaintiff hereby demands a trial by jury of all issues so triable.

## VII.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE Plaintiff requests that this Court enter an order:

(1)     Declaring that the at-large method of electing members to the Irving City Council violates Section 2 of the Voting Rights Act;

(2)     Enjoining Irving, its agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Irving under the at-large method;

(3)     Ordering Irving to devise an election plan, and implementation schedule for that plan, that remedies the violation of Section 2.  If Irving fails to devise such a plan, the Court should order into effect a new election plan of its own designed to remedy the violation of Section 2 and order elections to be held pursuant to that plan as promptly as possible;

(4)     An award of reasonable attorney's fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 42 U.S.C. § 1973l(e) and any other applicable statute;

(5)     Costs of Court; and

(6)     Any other relief, at law or in equity, to which Plaintiff may be entitled and which this Court deems just and proper.

Respectfully submitted,

**BICKEL & BREWER STOREFRONT, P.L.L.C.**

By: _____

    William A. Brewer III
    State Bar No. 2967035
    Michael L. Smith
    State Bar No. 24027989
    Michael Veeser
    State Bar No. 24042088

    1717 Main Street
    Suite 4800
    Dallas, Texas 75201
    Telephone:  (214) 653-4000
    Facsimile:  (214) 653-1015

    **ATTORNEYS FOR PLAINTIFF
    MANUEL BENAVIDEZ**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following on this the 13th day of November, 2007 as follows:

*Via Certified Mail:*

Charles Anderson
Irving City Attorney
825 West Irving Boulevard
Irving, Texas  75060

Thomas D. Spink
1319 N. Irving Heights Drive
Irving, Texas  75061

Mayor Herbert A. Gears
3716 Santiago Court, Apt. 1206
Irving, Texas  75062

Elizabeth (Beth) Van Duyne
2123 Shumard Oak Lane
Irving, Texas  75063

Allan E. Meagher
915 Colony Ridge Court
Irving, Texas  75061

Lewis Patrick
1416 Fulton Drive
Irving, Texas  75060

Rose Cannaday
104 W. Northgate Drive
Irving, Texas  75062

Rick Stopfer
9624 Santa Fe Circle
Irving, Texas  75063

Sam Smith
1601 Oak Meadow Drive
Irving, Texas  75061

Joe Philipp
3713 Guadalajara Ct.
Irving, Texas  75062

Greg Abbott, Texas Attorney Gen.
General Office of the Attorney Gen.
300 W. 15th Street
Austin, Texas  78701

Michael Veeser

5146308.2
8001-143

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT OF 1965**                    Page 11