UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANUEL A. BENAVIDEZ, | § § § | |
| Plaintiff | § § | |
| V. | § § | |
| THE CITY OF IRVING, TEXAS and HERBERT A. GEARS, THOMAS D. SPINK, ELIZABETH (BETH) VAN DUYNE, ALLAN E. MEAGHER, LEWIS PATRICK, ROSE CANNADAY, RICK STOPPER, SAM SMITH, and JOE PHILIPP, in their official capacities, | § § § § § § § § § § | CIVIL ACTION NO. 3:07 CV 1850-P |
| Defendants | § § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CHARLES R. ANDERSON
City Attorney
State Bar No. 01170500
CITY OF IRVING, TEXAS
825 W. Irving Boulevard
Irving, Texas 75060
Telephone: 972-721-2541
Facsimile: 972-721-2750

C. ROBERT HEATH
State Bar No. 09347500
BICKERSTAFF HEATH
DELGADO ACOSTA LLP
816 Congress Avenue, Suite 1700
Austin, Texas 78701-2443
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

*Page*

Index of Authorities ................................................................................................................. ii

Summary .................................................................................................................................. 1

I. The plaintiff must show that he is personally injured by the use of the at-large election system if he is to establish standing to bring the suit. ............................. 2

II. The Supreme Court has established a test to determine if the use of the at-large system results in injury. ........................................................................................ 3

III. The plaintiff does not reside in the area of concentrated Hispanic population and, thus, does not meet the Supreme Court test for standing in a challenge to an at-large election system. ...................................................................... 5

IV. Courts have routinely recognized that standing in voting rights cases is tied to the plaintiff's residence. .............................................................................................. 8

Conclusion ............................................................................................................................. 10

Certificate of Service ............................................................................................................. 11

# **INDEX OF AUTHORITIES**

*Page*

**CASES**

*Bush v. Vera,* 517 U.S. 952 (1996) .................................................................................. 7, 9

*Campos v. City of Houston,* 113 F.3d 544 (5th Cir. 1997) ................................................. 5

*Concerned Citizens for Equality v. McDonald,* 63 F.3d 413 (5th Cir. 1995) .................... 5

*De Grandy v. Wetherell,* 815 F. Supp. 1550 (N.D. Fla. 1992),
  *aff'd in part and rev'd in part sub nom., Johnson v. De Grandy,*
  512 U.S. 997 (1994) ........................................................................................................ 8

*Fairley v. Patterson,* 493 F.2d 598 (5th Cir. 1974) ........................................................... 8

*Hall v. Virginia,* 276 F. Supp.2d 528 (E.D. Va. 2003), *aff'd on other grounds,*
  385 F.3d 421 (4th Cir. 2004) ........................................................................................... 9

*Holder v. Hall,* 512 U.S. 874 (1994) .................................................................................. 5

*League of United Latin American Citizens v. Perry,* 548 U.S. 399 (2006) ....................... 7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130 (1992) .............................. 2

*Perez v. Pasadena Ind. Sch. Dist.,* 165 F.3d 368 (5th Cir. 1999) ...................................... 5

*Salas v. Southwest Texas Junior College District,* 964 F.2d 1542
  (5th Cir. 1992) ................................................................................................................. 4

*Shaw v. Hunt,* 517 U.S. 899 (1996) .................................................................................... 9

*Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752 (1986) .......................................... 3, 4

*United States v. Hays,* 515 U.S. 737 (1995) .................................................................. 8-9

*United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405 (1973) .......................................... 2

*Valdespino v. Alamo Heights Ind. Sch. Dist.,* 168 F.3d 848 (5th Cir. 1999) ..................... 5

*Valdespino v. Alamo Heights Ind. Sch. Dist.,* No. SA-94-CA-688
  (Sept. 1, 1995), *aff'd* 105 F.3d 653 (table) (5th Cir. Dec. 12, 1996) ............................... 9

*Page*

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) .................................................................. 2, 7

*Whitcomb v. Chavis*, 403 U.S. 124 (1971) ............................................................................. 8

*Wright v. Dougherty County, Georgia*, 358 F.3d 1352 (11th Cir. 2004) ......................................... 8

**OTHER**

Blacksher, James D. & Larry T. Menefee, *From Reynolds v. Sims to City of Mobile v. Bolden: Have the White Suburbs Commandeered the Fifteenth Amendment?*, 34 Hastings L.J. 1 (1982) ................................................................. 4

Carpeneti, W., "*Legislative Apportionment: Multimember Districts and Fair Representation,*" 120 U. PA. L. REV.666 (1972) ...................................................................... 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANUEL A. BENAVIDEZ, | § § | |
| Plaintiff | § § | |
| V. | § § | |
| THE CITY OF IRVING, TEXAS and HERBERT A. GEARS, THOMAS D. SPINK, ELIZABETH (BETH) VAN DUYNE, ALLAN E. MEAGHER, LEWIS PATRICK, ROSE CANNADAY, RICK STOPPER, SAM SMITH, and JOE PHILIPP, in their official capacities, | § § § § § § § § § | CIVIL ACTION NO. 3:07 CV 1850-P |
| Defendants | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### SUMMARY

To establish standing, a plaintiff bringing a challenge to the use of an at-large election system must show (1) that he has sustained an injury in fact, (2) that there is a causal connection between the use of the at-large system and the plaintiff's injury, and (3) that the injury will be redressed by a favorable decision. The causal link between the alleged dilution of the plaintiff's vote and the use of the at-large system is established by showing that it is possible to create at least one district in a single-member-district plan where the group of which the plaintiff is a member—in this case, Hispanics—constitutes a majority of the citizen-voting-age population. Even if a Hispanic citizen-voting-age population district could be created, it would not encompass the plaintiff's residence, which is roughly two miles from the area of Hispanic concentration. The use of an at-large system does not harm this individual plaintiff, and any

relief granted in this case would not provide any redress to him. As a result, the plaintiff cannot meet any of the elements of the standing test. He is, at most, a "concerned bystander" and does not have standing to bring the suit.

## I. The plaintiff must show that he is personally injured by the use of the at-large election system if he is to establish standing to bring the suit.

As a matter of federal constitutional law, the plaintiff may not maintain a suit in federal court unless he or she can establish (1) that he has sustained an "injury in fact," (2) that there is a causal connection between the injury and the conduct complained of, and (3) that it is likely the injury will be redressed by a favorable decision. *E.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2136 (1992). Further, the injury must be to the individual seeking to invoke the court's jurisdiction—in this case to Mr. Benavides. *Lujan*, 112 S.Ct. at 2137 ("injury in fact test requires that the party seeking review be himself among the injured"). This requirement of personal injury prevents the federal courts from becoming "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982) *(quoting United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416 (1973)).

The case before this court stands apart from the typical challenge to an at-large election system because the plaintiff does not reside in or near the area of concentrated minority population where any predominantly Hispanic single-member district would have to be located. As a result, he simply does not meet the minimal requirements of standing imposed by the Constitution. Mr. Benavides' basic problem in this case is at least two-fold. First, he is unable to establish any causal link between the use of an at-large election system and the alleged

2

dilution of *his* vote. Second, the relief he seeks[1]—the use of a single-member district election system—would not address any vote dilution that *he* may have suffered.

## II.     The Supreme Court has established a test to determine if the use of the at-large system results in injury.

The starting point of any review of a challenge to an at-large election system must be *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752 (1986)—a case that is especially relevant in the context of the second prong of *Lujan* since it is based almost entirely on an analysis of whether the use of an at-large election system bears a causal relationship to alleged vote dilution. In *Gingles*, the Supreme Court teaches that a plaintiff bringing a section 2 challenge to an at-large election system must establish a causal connection between the use of the at-large system and the alleged dilution of the plaintiff's vote. The *Gingles* Court establishes a three-part test designed to determine whether that causal relationship exists. For the purpose of this motion, the critical prong of the three-part *Gingles* test is the first one—*i.e.*, whether the minority group is sufficiently large and geographically compact so as to constitute a majority in a single-member district. As the Supreme Court explained:

> The reason that a minority group making such a challenge must show, as a threshold matter, that it is sufficiently large and geographically compact to constitute a majority in a single-member district is this: Unless minority voters possess *the potential* to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice . . . . As two commentators have explained: To demonstrate [that

---

[1]     Although the Plaintiff's First Amended Complaint contains a general prayer for relief ("Ordering Irving to devise an election plan . . . that remedies the violation of Section 2"), First Amended Complaint [Doc. 5] VII(2), it is clear that the only relief he seeks is implementation of a single-member district system. *See* First Amended Complaint, ¶ 23 ("Unless this Court directs the City to design a single member electoral system, the current discriminatory Electoral System will continue."); Joint Report on Status of Settlement Negotiations [Doc. 25] at 2 ("Plaintiff seeks an electoral system in which each member of the Irving City Council is elected from a single-member district, while the Irving mayor is elected at-large.").

> minority voters are injured by at-large elections], the minority voters must be sufficiently concentrated and politically cohesive that a putative districting plan would result in districts in which members of a racial minority would constitute a majority of the voters, whose clear electoral choices are in fact defeated by at-large voting. If minority voters' residences are substantially integrated throughout the jurisdiction, the at-large district cannot be blamed for the defeat of minority-supported candidates . . . .

*Gingles*, 478 U.S. at 50 n.17 [*quoting* James D. Blacksher & Larry T. Menefee, *From Reynolds v. Sims to City of Mobile v. Bolden: Have the White Suburbs Commandeered the Fifteenth Amendment?*, 34 Hastings L.J. 1 (1982)] (emphasis and brackets supplied by the Supreme Court); *see also Salas v. Southwest Texas Junior College District*, 964 F.2d 1542, 1554 (5th Cir. 1992) (*Gingles* inquiry is one of causation—*i.e.*, whether the challenged electoral practice is responsible for plaintiffs' inability to elect their preferred representatives); *accord* W. Carpeneti, "*Legislative Apportionment: Multimember Districts and Fair Representation*," 120 U. PA. L. REV. 666, 696 (1972) (the "requirement [that there be a cognizable racial group that is sufficiently large to elect a representative in a single member district allocation of seats] limits the ranks of potential plaintiffs to those who have been actually harmed by the multimember district plan").[2]

---

[2]   The Carpeneti article is perhaps of more than usual significance as it is one of the primary sources relied on by the Supreme Court in formulating the three-part *Gingles* test. Carpeneti, who was cited at least four times in *Gingles* with three of the citations to the specific page quoted in the text above, appears to have provided the initial formulation of the first prong of the *Gingles* test. Thus, from the very beginning, the requirement of showing the existence of a geographically compact minority group was perceived of in terms of confirming the existence of the personal injury necessary to establish standing.

### III. The plaintiff does not reside in the area of concentrated Hispanic population and, thus, does not meet the Supreme Court test for standing in a challenge to an at-large election system.

Under *Gingles*, one cannot establish a causal relationship between the use of an at-large system and alleged vote dilution unless there is a sufficiently large and geographically insular group of members of the protected class. In the Fifth Circuit this means that the group must constitute a majority of the citizen-voting-age population in a potential district. *Campos v. City of Houston*, 113 F.3d 544, 548 (5th Cir. 1997); *see also, Valdespino v. Alamo Heights Ind. Sch. Dist.*, 168 F.3d 848, 853 (5th Cir. 1999) ("this court has already determined what factors limit the relevant population in the district [when analyzing the first *Gingles* factor]: voting-age and citizenship"); *Perez v. Pasadena Ind. Sch. Dist.*, 165 F.3d 368, 372 (5th Cir. 1999) ("We have unequivocally held, however, that courts 'must consider the *citizen* voting-age population of the group challenging the electoral practice when determining whether the minority group is sufficiently large and geographically compact to constitute a majority.' . . . such a result is required by the plain language of Section 2.").

For the purpose of this summary judgment motion, the City of Irving is willing to assume that a district with a majority of Hispanic voting-age citizens could be created in an eight-single-member-district plan for the City of Irving.[3] That district, however, must necessarily be in

---

[3] In the *Gingles* analysis, the court is to determine if a minority district could be drawn in a plan where the number of single-member districts is equal to the total number of council seats in the existing system. *Holder v. Hall*, 512 U.S. 874 (1994) (plurality); *Concerned Citizens for Equality v. McDonald*, 63 F.3d 413, 417 (5th Cir. 1995). In Irving, there are eight council positions. Thus, the plaintiff must show that a Hispanic citizen-voting-age-population majority district can be drawn as part of an eight-district plan. While the city is willing to assume, solely for the purpose of this motion, that it is possible to draw a geographically compact, Hispanic citizen-voting-age-population majority district in an eight district plan, in fact, the city vigorously contests the plaintiff's contention that such a district can be drawn.

5

eastern Irving just south of Highway 183. Once one looks beyond that general area, there is simply no sufficiently concentrated area of Hispanic citizens that would produce a Hispanic-majority district.

The plaintiff resides at 2108 Meadow Glen—an address near the southernmost boundary of the city. Plaintiff's First Amended Complaint [Doc. 5] part II.A; App. 5, 9. Thus far in the litigation, the plaintiff's expert has produced five variations on a district that he claims has a Hispanic citizen-voting-age population majority. App. 5, 10. Depending on which of those five variations one chooses, the plaintiff's residence is between 1.5 and 2.2 miles from the nearest point of the putative district. App. 6, 12. Even if one of the proposed districts were stretched by the two miles or so necessary to reach Mr. Benavidez's residence, the district could not maintain its purported Hispanic citizen-voting age population majority. The area in which Mr. Benavides resides is largely non-Hispanic. App. 5-6, 9, 12. There are no majority Hispanic citizen-voting-age population blocks between Mr. Benavides' residence and any of the variations of the district presented by the plaintiff. App. 12. In fact, an examination of the map found at page 12 of the Appendix shows that there are only five blocks south of the plaintiff's proposed district that have as much as 40 percent Hispanic citizen-voting-age population. Instead, the area between the plaintiff's residence and the potential district is composed almost entirely of blocks where Hispanics represent less than twenty percent of the block's citizen-voting-age population. *Id.* Thus, if the district were reconfigured to reach the Benavides residence, it would be necessary to add blocks where the Hispanic citizen-voting-age population is very low and, in order to keep the district at a permissible size for one person–one vote purposes, to subtract blocks with relatively high percentages of Hispanic citizens. App. 6, 12. Even if it were possible to maintain a Hispanic citizen-voting-age population by extending a narrow two-mile long tentacle from the

main body of the district to Mr. Benavides' residence–and there is little likelihood that would be possible–the district would not meet the *Gingles* requirement of compactness. *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 433 (2006) ("A district that 'reaches out to grab small and apparently isolated minority communities' is not reasonably compact," *quoting Bush v. Vera*, 517 U.S. 952, 977 (1996)). Given the hard demographic facts, it simply "is not possible to draw a geographically compact, Hispanic citizen-voting-age population majority, city council district . . . that contains the plaintiff's residence." App. 6.

This is not a conclusion that is a matter of dispute. Dr. Rives, the city's expert, draws that conclusion in his affidavit, App. at 4–6, and Mr. Ely, the plaintiff's demographic expert, agrees. When asked in his deposition if it was virtually impossible to draw a 50 percent district that would include the plaintiff's residence, he answered "I - - probably, yes." App. 23. He also characterized the possibility of drawing a Hispanic majority district that would include the plaintiff's residence as "very unlikely." *Id.* The experts for both parties recognize that the plaintiff's residence falls outside the boundaries of any potential Hispanic citizen-voting-age population majority district.

While individuals who reside in the area of minority concentration may well have standing to claim that the at-large system dilutes their vote, individuals, such as the plaintiff here, who reside outside that area, do not. As *Gingles* teaches, if Mr. Benavides experienced dilution, the cause is not the use of the at-large system. Rather than one who has experienced an actual injury that is directly caused by the use of the at-large system, he is—in the words of the Supreme Court in *Valley Forge Christian College*—a "concerned bystander." A person who is willing to seek societal change because of the concern he has as a bystander plays a valuable public policy role; he does not, however, have standing to invoke the jurisdiction of the federal

7

courts to challenge a system that does not directly affect him. His remedy is through the political process rather than through the courts.

### IV. Courts have routinely recognized that standing in voting rights cases is tied to the plaintiff's residence.

The requirement that a voting rights plaintiff be able to demonstrate standing in the same manner as any other litigant is not a new one. In *Whitcomb v. Chavis*, 403 U.S. 124 (1971), the first at-large/vote dilution case considered by the United States Supreme Court, the trial court found that plaintiffs who lived within the area of minority concentration had standing to challenge the use of the at-large system while persons who lived outside that area did not. 403 U.S. at 137 n.17. Similarly, in *De Grandy v. Wetherell*, 815 F. Supp. 1550, 1560 n.14 (N.D. Fla. 1992) (3-judge court), *aff'd in part and rev'd in part sub nom., Johnson v. De Grandy*, 512 U.S. 997 (1994), which was a challenge to a state-wide redistricting of the Florida House of Representatives, the court determined that a plaintiff residing in the Miami area had no standing to question the boundaries of districts in the Pensacola area. In *Fairley v. Patterson*, 493 F.2d 598, 603-04 (5th Cir. 1974), a Fourteenth Amendment case raising a one person–one vote claim, the Fifth Circuit held that a voter who resided in an overrepresented district—that is, a district with less population than a district of the ideal size—had no standing to bring a one person/one vote case. *See also Wright v. Dougherty County, Georgia*, 358 F.3d 1352, 1355-56 (11th Cir. 2004) (relying on precedent from the "old Fifth Circuit").

While most standing issues in voting rights cases are decided in the lower courts and often do not present an issue on appeal because the cases frequently have multiple plaintiffs at least one of whom does have standing, a 1995 U. S. Supreme Court case squarely presented a voting rights standing question. *United States v. Hays* presented a Fourteenth Amendment,

8

racial gerrymandering challenge to Louisiana congressional districts. 515 U.S. 737 (1995). The lower court determined that the plaintiffs had standing, but the Supreme Court disagreed and ordered the case dismissed. While *Hays* arose under the Fourteenth Amendment rather than section 2 of the Voting Rights Act, the standing principles are the same. Persons who resided within the district alleged to be a racial gerrymander had standing, while persons residing outside the district did not. *Hays*, 515 U.S. at 745. *See also Bush v. Vera*, 517 U.S. 952, 957-58 (1996); *Shaw v. Hunt*, 517 U.S. 899, 904 (1996).

Shortly after the Supreme Court issued its opinion in *Hays*, a court in the Western District of Texas faced the precise issue presented in this case. The plaintiff raising a section 2 challenge to an at-large election system resided outside the area of minority concentration so that any single-member district that potentially would have a Hispanic citizen-voting-age population majority would not contain the plaintiff's residence. The court determined that the *Hays* standard applied and dismissed the case for lack of standing. *Valdespino v. Alamo Heights Ind. Sch. Dist.*, No. SA-94-CA-688 (Sept 1, 1995), *aff'd*, 105 F.3d 653 (table), No. 95-50719 (5th Cir. Dec. 12, 1996).[4] *See also Hall v. Virginia*, 276 F. Supp.2d 528, 531 (E.D. Va. 2003), *aff'd on other grounds,* 385 F.3d 421 (4th Cir. 2004) (holding *Hays* concept of residential standing applies to section 2 challenges just as it does to equal protection claims). Although the unpublished Fifth Circuit opinion in *Valdespino* was decided after January 1, 1996, and is not precedent, Fifth Circuit Local Rule 47.5.4, it is persuasive and correctly states the law.

---

[4] Copies of the district court and Fifth Circuit unpublished opinions are found in the Appendix at pages 31-43.

9

## CONCLUSION

The Constitution requires that persons invoking the jurisdiction of the federal court be able to demonstrate that (1) they have personally suffered an injury, (2) the injury is caused by the governmental action that they challenge, and (3) the injury is subject to being redressed by a favorable decision. The plaintiffs here simply cannot meet that test. Under the teaching of the Supreme Court in *Gingles*, at-large systems are not dilutive unless there is an area of minority population concentration and then are dilutive only to those minority group members who reside there. Since the plaintiff resides far from the area of minority concentration, he does not suffer an injury that can be said to have been caused by the use of the challenged election system and, thus, he does not have standing to bring this action. The court should accordingly dismiss the cause.

Respectfully submitted,

CHARLES R. ANDERSON
City Attorney
State Bar No. 01170500
CITY OF IRVING, TEXAS
825 W. Irving Boulevard
Irving, Texas 75060
Telephone: 972-721-2541
Facsimile: 972-721-2750

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
816 Congress Avenue, Suite 1700
Austin, Texas 78701-2443
Telephone: (512) 472-8021
Facsimile: (512) 320-5638


By: __/s/_____
    C. ROBERT HEATH
    State Bar No. 09347500

*Attorneys for Defendants*


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on the following via electronic transmission and United States mail, certified, return receipt requested, on this the 5th day of December, 2008 as follows:

Michael Veeser
William A. Brewer III
Michael L. Smith
Bickel & Brewer Storefront, P.L.L.C.
1717 Main Street, Suite 4800
Dallas, Texas 75201
E-mail: MCV@bickelbrewer.com


/s/_____
C. ROBERT HEATH

11