# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| MANUEL A. BENAVIDEZ, <br><br>     Plaintiff, <br><br> v. <br><br> THE CITY OF IRVING, TEXAS and HERBERT A. GEARS, THOMAS D. SPINK, BETH VAN DUYNE, ALLAN E. MEAGHER, LEWIS PATRICK, ROSE CANNADAY, RICK STOPFER, SAM SMITH, and JOE PHILIPP, in their official capacities, <br><br>     Defendants. | § § § § § § § § § § § § § § §  CIVIL ACTION NO. 3:07 CV 1850-P ECF |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BICKEL & BREWER STOREFRONT, PLLC**

William A. Brewer III
State Bar No. 2967035
Michael L. Smith
State Bar No. 24027989
Wendy C. Wang
State Bar. No. 24033433
Michael Veeser
State Bar No. 24042088

1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF
MANUEL A. BENAVIDEZ**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...........................................................................1

II. STATEMENT OF MATERIAL FACTS.............................................................2

III. SUMMARY OF ARGUMENT .........................................................................4

IV. APPLICABLE STANDARDS ...........................................................................5

      A.      Summary Judgment ...............................................................................5

      B.      Standing ...................................................................................................6

V. ARGUMENTS AND AUTHORITIES................................................................7

      A.      Plaintiff Has Standing Even If Defendants Are Correct In Their Assertion That A Plaintiff In A Voting Rights Act Suit Must Reside Within The Area Of A Viable *Gingles* District To Have Standing. ..........................................7

            1.      Plaintiff can create at least one district that satisfies the requirements of prong 1 of *Gingles* and includes the location of Plaintiff's residence. ..........................................7

            2.      Because Plaintiff's residence is within the area of at least one illustrative district that satisfies prong 1 of *Gingles*, he has standing. ..........................................11

      B.      Even If Plaintiff's Residence Were Outside The Area In Which An Illustrative District That Satisfied Prong 1 Of *Gingles* Could Be Drawn, Plaintiff Would Still Have Standing As He Would Be Able To Show Harm-In-Fact, Causation, And Redressability.....................................15

            1.      Injury-in-fact ..................................................................17

             2.      Causation.........................................................................18

             3.      Redressability...................................................................19

VI. CONCLUSION AND REQUEST FOR RELIEF................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Canoe Ass'n v. Murphy Farms,*
    326 F.3d 505 (E.D.N.C. 2004)..................................................................................7

*Brazan v. Hidalgo County,*
    246 F.3d 481 (5th Cir. 2001) ....................................................................................6

*Brousseau v. Haugen,*
    543 U.S. 194 (2004)..................................................................................................6

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................................5

*Clark v. Calhoun County,*
    88 F.3d 1393 (5th Cir. 1996) ..................................................................................15

*Deal v. Detroit,*
    No. 87-CV-70099-DT, 1988 U.S. Dist. LEXIS 18240 (E.D. Mich. Aug. 12, 1988) ...............6

*Flast v. Cohen,*
    392 U.S. 83 (1962)....................................................................................................7

*Goosby v. Town Bd.,*
    956 F. Supp. 326 (E.D.N.Y. 1997) ........................................................................15

*GTX Corp. v. Kofax Image Prod., Inc.,*
    571 F. Supp. 2d 742 (E.D. Tex. 2008)....................................................................5

*Hays v. United States,*
    515 U.S. 737 (U.S. 1995)........................................................................................16

*In re MMR Holding Corp.,*
    No. 98-357, 2000-2 U.S. Tax Cas. (CCH)................................................................7

*Johnson v. Harrah's Entm't, Inc.,*
    No. 04-331 Section ...................................................................................................6

*Kia Motors Am., Inc. v. Autoworks Distr.,*
    No. 06-156 .................................................................................................................6

*Lexxus Int'l, Inc., v. Loghhry,*
    512 F. Supp.2d 647 (N.D. Tex. 2001) .................................................................5, 6

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).................................................................................... passim

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)..........................................................................................6

*Nature Conservancy v. Browder,*
   No. 2:07-CV-122, 2008 U.S. Dist. LEXIS 8545 (E.D. Tenn. Feb. 12, 2006)..........................7

*O'Hair v. White,*
   675 F.2d 680 (5th Cir. 1982) ...........................................................................7

*Riley v. St. Luke's Episcopal Hosp.,*
   196 F.3d 514 (5th Cir. 1999) ...........................................................................7

*Shaw v. Reno,*
   509 U.S. 630 (1993)........................................................................................16

*Shirt v. Hazeltine,*
   461 F.3d 1011 (8th Cir. 2006) .........................................................................15

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998)............................................................................................7

*Taita Chem. Co., Ltd. v. West Lake Styrene Corp.,*
   246 F.3d 377 (5th Cir. 2001) ......................................................................5, 6

*Thornburg v. Gingles,*
   478 U.S. 30 (1986)................................................................................... passim

*Valdespino v. Alamo Heights Ind. Sch. Dist.,*
   105 F.3d 653 (Table), No. 95-50719 (5th Cir. Dec. 12, 1996).........................11, 12

*Valdespino v. Alamo Heights Ind. Sch. Dist.,*
   No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) ....................................11, 12, 14, 15

## STATUTES

42 U.S.C. § 1973, *et seq.*..................................................................................1

FED. R. CIV. P. 56(c) .......................................................................................5

Plaintiff Manuel A. Benavidez ("Plaintiff") files this Brief in Support of Response in Opposition to Defendants', the City of Irving, Texas and Herbert A. Gears, Thomas D. Spink, Beth Van Duyne, Allan E. Meagher, Lewis Patrick, Rose Cannaday, Rick Stopper, Sam Smith, and Joe Philipp, in their official capacities (collectively, the "Defendants"), Motion for Summary Judgment (the "Motion"), as follows:

I.

**<u>PRELIMINARY STATEMENT</u>**

In their Motion and Brief in Support of Motion for Summary Judgment ("Brief"), Defendants do not dispute that Hispanics are not adequately represented by Irving's current illegal at-large system for electing its city council.  Instead, Defendants seek summary judgment on the ground that Plaintiff lacks standing to pursue this action because he allegedly does not reside at a location that can be included in an illustrative district that meets the requirements of prong 1 of *Gingles*.[1]   Notwithstanding Defendants' conclusory allegations to the contrary, Plaintiff's residence, however, can be included in an illustrative district that meets the requirements of prong 1 of *Gingles* and, therefore, Plaintiff has standing to pursue his claim under section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, *et seq.* (the "Voting Rights Act").  Moreover, even if Plaintiff does not reside within the area of a viable *Gingles* 1 district, he would have standing because he would still meet the constitutional requirements to establish standing under Article III of the United States Constitution.  At a minimum, genuine issues of material fact exist with respect to whether Plaintiff has standing. Accordingly, the Court should deny the Motion.

---

[1] *Thornburg v. Gingles*, 478 U.S. 30 (1986).

## II.

## STATEMENT OF MATERIAL FACTS

On November 7, 2007, Plaintiff commenced this suit under the Voting Rights Act to challenge the legality of the City of Irving's at-large electoral system for electing city council members.[2]   Specifically, Plaintiff alleged that the at-large system has the effect of diluting the voting power of Hispanic voters in the City of Irving, precisely the type of harm that the Voting Rights Act was enacted to remedy.[3]

On July 9, 2008, Plaintiff designated his expert witnesses and served their expert reports simultaneously therewith, including that of David Ely ("Ely").[4]   In his report, Ely opines, among other things, that it is possible to create a proposed illustrative district in which "Hispanics currently comprise a majority of the voting age citizens."[5]   On November 24, 2008, Plaintiff served Ely's supplemental report[6] in which Ely further opined that it was possible to create

---

[2] Plaintiff amended his complaint on November 13, 2007.  Defendants filed their answer on November 26, 2007.

[3] *See* Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief under the Voting Rights Act of 1965 ("Amended Complaint") at 6 [Pl. App. 6].

[4] *See* Disclosure of Expert Testimony Pursuant to Rule 26(a)(2), served July 9, 2008, attached hereto as Exhibit 1 to Declaration of Michael Veeser, Esq., dated December 29, 2008 ("Veeser Decl.") [Pl. App. 89-91].

[5] *See* Analysis of Registered Voters and Illustrative Irving City Council District, dated July 9, 2008 (the "Ely Report"), attached hereto as Exhibit 2 to Veeser Decl. [Pl. App. 93-103]. Plaintiff served Ely's rebuttal report on September 8, 2008.  *See* Analysis of Rives' and Alford's Rebuttal Reports, dated September 8, 2008 (the "Ely Rebuttal Report"), attached hereto as Exhibit 3 to Veeser Decl. [Pl. App. 105-109].

[6] *See* Illustrative District Analysis, served November 24, 2008 (the "Ely Suppl. Report"), attached hereto as Exhibit 2 to Declaration of David Ely under 28 U.S.C. sec. 1746, dated December 29, 2008 ("Ely Decl.") [Pl. App. 60-69].

---

proposed illustrative districts with "multiple potential configurations" and, in particular, one of the proposed districts had a "strong majority (58%) of Hispanic" eligible voters.[7]

Irving elects all of the members of its city council from an at-large electorate comprised of all of the voters residing in Irving.[8]   Plaintiff Manuel Benavidez resides in Irving at 2108 Meadow Glen.[9]  Plaintiff is, therefore, a member of the electorate for each of the members of Irving's city council.[10]

The City of Irving's website reports that the City's population was 31.2% Hispanic in 2000, based on that year's census.[11]   The American Community Survey ("ACS") 2005-2007 three year analysis of the City's population reflects a rapid increase in the proportion of its population that is Hispanic to 40.6%.[12]  Notwithstanding the substantial proportion of Irving's

---

[7] *See* Ely Suppl. Report at 4-5.  Defendants have not refuted the opinions set forth by Ely in his supplemental report [Pl. App. 63-64].

[8] *See* City of Irving (Texas) City Charter, Article IV: Section 4 ("The mayor and council members shall be elected by the qualified voters of the entire city . . ."), attached hereto as Exhibit 4 to Veeser Decl. [Pl. App. 113]; Ely Decl. ¶ 9 [Pl. App. 53].

[9] *See* Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief Under the Voting Rights Act of 1965 in this action, filed November 13, 2007, at 2 [Pl. App. 2].

[10] *See* Ely Decl. ¶ 9 [Pl. App. 53].

[11] *See* printout from the Census Bureau's website of "DP-1.   Profile of General Demographic Characteristics: 2000" for Irving, Texas, attached hereto as Exhibit 6 to Ely Decl. [Pl. App. 81]; *see also* Exhibit 6 to the City of Irving's Submission for Preclearance under Section J of the Voting Rights Act or the City of Irving, Texas, dated December 15, 2006, relevant excerpts of which are attached hereto as Exhibit 5 to Veeser Decl. [Pl. App. 123-24].

[12] *See* printout from Census Bureau's website of American Community Survey data summary for 2005-2007 for the City of Irving, attached hereto as Exhibit 7 to Ely Decl.; Ely Decl. ¶ 12 [Pl. App. 84].

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN**
**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                Page 3

population that is Hispanic and its rapid increase over the last several years, not a single member of Irving's current city council is Hispanic.[13]

### III.

### SUMMARY OF ARGUMENT

In the Motion, Defendants move for summary judgment on the sole ground that Plaintiff lacks standing to maintain this action because he does not reside within the area of an illustrative district that meets the requirements of prong 1 of *Gingles*. Defendants' Motion should be denied for two reasons. <u>First</u>, even assuming, *arguendo*, that Defendants are correct in their assertion that a plaintiff in a suit under section 2 of the Voting Rights Act must reside within an illustrative district that satisfies prong 1 of *Gingles*, Plaintiff can, and does, show that his residence may be included within such a district. Accordingly, Plaintiff has standing because he can show: (1) that he has sustained an "injury in fact"; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable decision. At a minimum, there are genuine issues of material fact with regard to whether Plaintiff has standing. <u>Second</u>, even if Plaintiff's residence lies outside the area on any illustrative district that satisfies prong 1, Plaintiff can still make the same showing of standing.

---

[13] *See* Defendants' Response to Plaintiff's Interrogatory No. 14, attached hereto as Exhibit 6 to Veeser Decl. (stating that the only prevailing Hispanic candidate for Irving's city council over the last 20 years was James Dickey, who was last elected in 2004) [Pl. App. 127]. James Dickey was defeated in 2007. As reflected on the City of Irving's website, Mr. Dickey no longer serves on the council. *See* print out of http://www.ci.irving.tx.us/elected-officials/city-council-members.html, attached hereto as Exhibit 7 to Veeser Decl. [Pl. App. 131-35].

## IV.

## **APPLICABLE STANDARDS**

### A.   **Summary Judgment**

Summary judgment is proper only when the moving party is able to establish that the pleadings, depositions, affidavits, and other appropriate evidence available to the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[14]  The party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[15]

When ruling on a motion for summary judgment, a court "may not make credibility determinations or weigh the evidence."[16]  Instead, "the court is required to view all inferences

---

[14] *See* FED. R. CIV. P. 56(c) ("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Taita Chem. Co., Ltd. v. West Lake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *GTX Corp. v. Kofax Image Prod., Inc.*, 571 F. Supp. 2d 742, 745 (E.D. Tex. 2008).

[15] *See Celotex Corp.*, 477 U.S. at 323.

[16] *Lexxus Int'l, Inc., v. Loghhry,* 512 F. Supp.2d 647, 656 (N.D. Tex. 2001); *Taita Chem. Co., Ltd.*, 246 F.3d at 385 ("Determining credibility, weighing evidence, and drawing reasonable interferences are left to the trier of fact.") (citing *Anderson v. Liberty, Inc.*, 477 U.S. 242, 255 (1982)).

drawn from the factual record in the light most favorable to the nonmoving party,"[17] and accept the nonmovant's evidence as true.[18]

**B.**     **Standing**

Under federal constitutional law, an individual must establish the following elements to show standing under Article III of the Constitution:  (1) that he or she has sustained an "injury in fact"; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable decision.[19]  Standing is a procedural

---

[17] *Lexxus Int'l*, 512 F. Supp.2d at 656.

[18] *See Brousseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004) ("Because this case arises in the posture of a motion for summary judgment, we are required to view all facts and draw all reasonable inferences in favor of the non-moving party, Haugen.") (citing *Saucer v. Katz*, 533 U.S. 194, 201 (2001); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Taita Chem. Co., Ltd.*, 246 F.3d at 385 ("If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted.") (citing *Anderson*, 477 U.S. at 247-48); *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("Of course, the summary judgment record/evidence is viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor.") (citing *Behrens v. Pelletier*, 516 U.S. 299, 303 (1986) and *Anderson*, 477 U.S. at 255).

[19] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("[O]ur cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (citations and some internal quotes omitted).  When summary judgment is granted for a defendant based on the issue of standing, the resulting dismissal should be without prejudice. *See Kia Motors Am., Inc. v. Autoworks Distr.*, No. 06-156 (DWF/JJG), 2007 U.S. Dist. LEXIS 90419, at *9-*10 (D. Minn. Dec. 7, 2007) (dismissing claim without prejudice based on lack of standing pursuant to defendants' motion for partial summary judgment); *Johnson v. Harrah's Entm't, Inc.*, No. 04-331 Section "M"(3), 2005 U.S. Dist. LEXIS 36485, at *31 (E.D. La. Nov. 16, 2005) (granting motion for partial summary judgment as to "wage claim insofar as it seeks dismissal without prejudice on the ground of lack of standing to pursue [that] claim"); *Deal v. Detroit*, No. 87-CV-70099-DT, 1988 U.S. Dist.

issue.[20]  While courts will sometimes consider the substantive law of a claim in determining whether standing exists, courts are not to weigh the evidence as would a trier-of-fact in finally adjudicating such a claim.[21]

# V.

## ARGUMENTS AND AUTHORITIES

**A.  Plaintiff Has Standing Even If Defendants Are Correct In Their Assertion That A Plaintiff In A Voting Rights Act Suit Must Reside Within The Area Of A Viable _Gingles_ District To Have Standing.**

**1.  Plaintiff can create at least one district that satisfies the requirements of prong 1 of _Gingles_ and includes the location of Plaintiff's residence.**

Defendants' Motion is premised on the erroneous assertion that because none of Plaintiff's illustrative districts include Plaintiff's residence within their boundaries, Plaintiff

---

LEXIS 18240, at *6 (E.D. Mich. Aug. 12, 1988) (granting motion for summary judgment as to standing issue only and dismissing it without prejudice).

[20] _See Steel Co. v. Citizens for a Better Env't_, 523 U.S. 83, 107 (1998) (deeming standing an issue to be establish prior to a litigant's right to litigate a substantive issue); _Riley v. St. Luke's Episcopal Hosp._, 196 F.3d 514, 541 (5th Cir. 1999) (same, citing _Steel Co._); _Nature Conservancy v. Browder_, No. 2:07-CV-122, 2008 U.S. Dist. LEXIS 8545, at * 14 (E.D. Tenn. Feb. 12, 2006) (applying federal law to standing because "the issue of standing is a procedural matter and not a matter of state substantive law"); _Am. Canoe Ass'n v. Murphy Farms_, 326 F.3d 505, 514 (E.D.N.C. 2004) (deeming standing a procedural issue); _In re MMR Holding Corp._, No. 98-357, 2000-2 U.S. Tax Cas. (CCH) P50, 866, 2000 U.S. Dist. LEXIS 17723, at * 3 (M.D. La. Oct. 27, 2000) (deeming standing issue "procedural").

[21] _See Flast v. Cohen_, 392 U.S. 83, 101-02 (1962) (stating that, in determining whether a plaintiff had standing it, was "appropriate and necessary to look to the substantive issues ... to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated"); _O'Hair v. White_, 675 F.2d 680, 685-86 (5th Cir. 1982) ("Perhaps the most fundamental aspect of the standing issue doctrine is that it focuses on the particular plaintiff seeking to bring his claim before the federal court, not on the issues or merits of the case.  The gist of the standing question is whether appellants have 'alleged such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'"  When considering the question of standing, the court continued, "the nature and source of the claims are relevant." _Id._ at 686.).

lacks standing to bring this action.[22]  This contention is wrong because it is possible to create an

illustrative district that includes Plaintiff's residence and, therefore, Plaintiff has standing

because he meets the requirements to show standing under *Lujan*: harm-in-fact, causation, and

redressability.  Defendants fail to recognize that at least one illustrative district can be drawn

which includes Plaintiff's residence (2108 Meadow Glen, Irving, Texas) and has a citizen voting

age population ("CVAP") comprised of a majority of Hispanics.[23]  In fact, Ely demonstrates that

it is possible to draw an illustrative district that: (a) contains a Hispanic CVAP of 55.6%, (b) is

near the ideal district population, and (c) contains the location of Plaintiff's residence

("Illustrative District C"), contrary to Defendants' conclusory allegation otherwise.[24]  Such a

district is possible, in part, because the area between Illustrative District C and Plaintiff's

---

[22] *See* Brief at 6-7.  Defendants, however, concede for the purpose of their Motion that a city council single-member district with a majority of eligible Hispanic voters can be drawn in Irving.  *See id.* at 5.  For purposes of Defendants' Motion, then, the disagreement between the parties is over whether such a district can be drawn to include Plaintiff's residence.

[23] *See* Ely Decl. ¶ 6 [Pl. App. 52].  A map of the illustrative District—"Illustrative District C"—is attached as Exhibit 3 to the Ely Declaration, and a table showing the demographic characteristics of that district is attached thereto as Exhibit 4 [Pl. App. 71,73].  Prong 1 of *Gingles* requires that Plaintiff demonstrate that Hispanics have the potential to elect representation of their choice from a part of the challenged at-large district.  *See Gingles*, 480 U.S. at 50 ("First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.  If it is not, as would be the case in a substantially-integrated district, the *multi-member forum* of the district cannot be responsible for minority voters' inability to elect its candidate.") (italics in original).

[24] *See* Ely Decl. ¶ 6 [Pl. App. 52].  Illustrative District C, as well as other illustrative districts developed by Ely, satisfies the compactness requirement of pong 1 of *Gingles* and, in fact, is well within the range of compactness found in current or recent  single member districts in Texas.  *See* Ely Decl. ¶ 7 and Exhibit 5 thereto [Pl. App. 52, 75-78].

residence is sparsely populated, in contrast to the original population assumption Ely had to make in his deposition in order to respond to Defendants' counsel's questions.[25]

The estimated proportion of eligible Hispanic voters in Illustrative District C (55.6%) comfortably exceeds 50%, notwithstanding Defendants' conclusory assertion that it would be impossible to draw a *Gingles* 1 district that includes Plaintiff's residence. A number of factors contribute to the relative ease with which Ely was able to draw a conforming district. As Ely explains, many of the blocks separating Plaintiff's residence from the area of highest Hispanic concentration are either unpopulated or sparsely populated.[26] In addition, many of the blocks separating Plaintiff's residence from the area of highest Hispanic concentration in Irving have significant Hispanic population themselves.[27] Thus, according to Ely, "it is not difficult to include these blocks while maintaining a Hispanic majority of CVAP and near ideal district size."[28] "[O]nly minor modification is required to include Plaintiff's residence in a district constructed from Illustrative District A," a district previously drawn by Ely.[29] Moreover, the analysis that goes into the creation of a remedial district designed by a legislative authority (which is the branch of government tasked with redistricting) is different from that which goes into the creation of an illustrative district.[30] An illustrative district is intended only to

---

[25] *See* Ely Depo. 39:20-40:1 (stating that Ely's answer to Defendants' counsel's question concerning the viability of creating an illustrative district that included Plaintiff's residence was based on an "assum[ption] that the area is populated") [Def. App. 23-24].

[26] *See* Ely Decl. ¶ 5 [Pl. App. 52].

[27] *See id.* [Pl. App. 52].

[28] *See id.* [Pl. App. 52].

[29] *See id.* ¶ 4 [Pl. App. 51].

[30] *See id.* ¶ 8 [Pl. App. 52].

demonstrate that prong 1 of *Gingles* can be met, and does not represent the only, or even the most desirable, remedy available.[31]   In fact, remedial districts implemented by legislative bodies to remedy minority voter dilution are often very different from illustrative districts due to the impact of local input into their creation.[32]   Based on Ely's analysis and opinions, there exist genuine issues of material fact as to whether Plaintiff's residence can be placed into an illustrative district that satisfies the requirements of prong 1 of *Gingles*.   Accordingly, summary judgment is not appropriate and should be denied.

Defendants also erroneously contend that Ely conceded at deposition that it would be "virtually impossible" to reach 50% Hispanic citizen voting age population in an illustrative district that includes Plaintiff's residence.[33]   Ely, however, did not concede that it was impossible to draw an illustrative district with a Hispanic majority of eligible voters that includes Plaintiff's residence.   Instead, Ely clearly stated that he had not performed an analysis based on the criteria put to him by Defendants' counsel during his deposition.[34]   Additionally, Ely qualified that his responses were based on the assumption that the area between the illustrative district in question

---

[31] *See id.* [Pl. App. 52-53].

[32] *See id.* ¶ 8 [Pl. App. 53].

[33] *See* Brief at 7 (stating, without further explanation, that Ely's response to such question was "I — probably, yes.").

[34] *See* Ely Deposition at 38:10-23 ("Q.  (BY MR. HEATH)  I'm going to show you a map that — first, I've handed you what has been marked Ely Exhibit No. 5.  And can you look at the map there, and does that appear to you to represent the City of Irving with the district that you have drawn outlined in green?  A.  Yes, it certainly appears to.  Q.  Okay.  And it has also on there, blocks, census blocks, that have 50% and above Hispanic voting age population, non-citizen and the blocks that are less than 50%?  Is that — A.  I can't independently verify that the data is correct, but it roughly looks — Q.  Okay.  A.  — reasonable.") [Def. App. 22].

and Plaintiff's residence was populated.[35]   As discussed above, that assumption proved to be false.  Thus, Defendants' assertion in their Motion that Ely "agree[d]" that "it simply 'is not possible to draw a geographically compact, Hispanic citizen-voting-age population majority, City Council district . . . that contains the plaintiff's residence" is misleading since Ely's testimony was expressly qualified by assumptions that Defendants have not take into account.[36]

**2.**     **Because Plaintiff's residence is within the area of at least one illustrative district that satisfies prong 1 of _Gingles_, he has standing.**

As stated above at Section V.A.1, an illustrative district meeting the requirements of prong 1 of _Gingles_ can be drawn that includes the location of Plaintiff's residence.[37]  A plaintiff in a section 2 vote dilution challenge who resides within the area of a viable _Gingles_ district will have little difficulty establishing standing under the _Lujan_ standard, a point that Defendants all-but-concede in their Motion.[38]   The one unpublished case cited by Defendants that addresses

---

[35] For instance, Ely indicated that he was basing his answer to the question concerning the feasibility of drawing an illustrative district that included Plaintiff's residence on the assumption that the area is populated. _See_ Ely Deposition at 39:20-40:1 [Def. App. 23-24].

[36] _See_ Ely Decl. ¶ 3 [Pl. App. 50-51]; Ely Deposition at 38:10-40:1 [Def. App. 22-24].

[37] The holding in the _Valdespino_ case, the only case cited by Defendants which considered standing in section 2 challenges to at-large districts, is factually distinguishable from the instant case.  The plaintiffs in _Valdespino_ were entirely unable to introduce evidence that they could be placed within the area of a viable _Gingles_ prong 1 district.  _See Valdespino v. Alamo Heights Ind. Sch. Dist._, 105 F.3d 653 (table), No. 95-50719, at n.1 (5th Cir. Dec. 12, 1996) (unpublished decision) (affirming dismissal of suit for lack of standing because plaintiffs resided outside the putative district and noting that there was no factual dispute as to this proposition because "[p]laintiffs offered no summary judgment evidence which could allow any other conclusion") [Def. App. 42]; _Valdespino v. Alamo Heights Ind. Sch. Dist._, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) (unpublished decision) (stating that plaintiffs lack standing because they resided "outside the putative minority district") [Def. App. 36].

[38] _See_ Brief at 7 (stating that "individuals who reside in the area of minority concentration [in Irving] may well have standing to claim that the at-large system dilutes their vote.").

standing in actions brought under section 2 of the Voting Rights Act[39] appears to assume that a minority plaintiff challenging an at-large election scheme will have standing if that plaintiff resides in an illustrative district that complies with prong 1 of *Gingles*.[40]

Nonetheless, Plaintiff has standing in this case because he can show that he has (1) suffered an injury-in-fact; (2) that is caused by the challenged electoral practice; and (3) that can be resolved by the requested remedy.[41]  The court in *Gingles* stated that the "essence" of a challenge to an at-large electoral scheme pursuant to section 2 of the Voting Rights Act is to show that a challenged electoral system has the effect of diluting the voting power of a minority voting group:

> The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.  This Court has long recognized that multi-member districts and at-large voting schemes

---

[39] *See Valdespino v. Alamo Heights Ind. Sch. Dist.*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995), *aff'd*, 105 F.3d 653 (table), No. 95-50719 (5th Cir. Dec. 12, 1996) [Def. App. 31-43]. Because neither the table opinion from the Western District of Texas nor the Fifth Circuit opinion is published, this Court is not bound by those opinions, pursuant to Fifth Circuit Local Rule 47.5.4.  *See also* Brief at 9 ("…the unpublished Fifth Circuit opinion in *Valdespino* . . . is not precedent . . .") (citing Fifth Circuit Local Rule 47.5.4, which provides as follows: "Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorneys fees, or the like.").

[40] *See Valdespino*, 105 F.3d 653, n.1 (affirming dismissal of suit for lack of standing because plaintiffs resided outside the putative district and noting that "[p]laintiffs offered no summary judgment evidence which could allow any other conclusion") [Def. App. 42]; *Valdespino v. Alamo Heights Ind. Sch. Dist.*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) (stating that plaintiffs lack standing because they resided "outside the putative district") [Def. App. 36].  As stated above, Plaintiff in this matter has introduced evidence that he can be placed in an illustrative district that complies with prong 1 of *Gingles* and in which Hispanics comprise an estimated 55.6% of eligible voters.  *See* Ely Decl. ¶ 6 and Exhibits 3 and 4 thereto [Pl. App. 52, 71, 73].

[41] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN**
**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                    Page 12

may 'operate to minimize or cancel out the voting strength of racial [minorities in] the voting population.'[42]

A section 2 claim, then, permits a plaintiff to challenge an electoral scheme that illegally dilutes the electoral power of minority voters.  To accomplish that end, prong 1 of the *Gingles* threshold inquiry requires a plaintiff challenging such an illegal at-large electoral system to show that, as an initial matter, a single-member district can be created that is geographically compact and in which minority members are sufficiently numerous to have the opportunity to elect representatives of their choice.[43]  The court in *Gingles* stated that the purpose of prong 1 is to permit a plaintiff to demonstrate "the *potential* [of minority voters] to elect representatives in the absence of the challenged structure or practice."[44]

The court's analysis in *Gingles* neatly encapsulates each of the prongs of the *Lujan* standard, and Plaintiff satisfies all of them.  First, plaintiff in a section 2 challenge under the Voting Rights Act must allege that an "electoral law, practice, or structure" causes an inequality of opportunity on the part of minority voters to "elect their preferred representatives."[45]  Here, Plaintiff has asserted such harm to him by alleging that his vote has been illegally diluted by the

---

[42] *Gingles*, 478 U.S. at 47.

[43] *See id.* at 50 ("First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.  If it is not, as would be the case in a substantially integrated district, the *multi-member form* of the district cannot be responsible for minority voters' inability to elect its candidates.") (italics in original).

[44] *Id.* at 50 n.17 (stating that the purpose of prong 1 is to permit a plaintiff to demonstrate "the *potential* [of minority voters] to elect representatives in the absence of the challenged structure or practice") (italics in original).

[45] *See id.* at 47.

City of Irving's system for electing each of its members of city council.[46]  Plaintiff's ability to

draw a viable *Gingles* 1 district demonstrates that he is among those who have suffered an

injury-in-fact from Irving's electoral scheme.[47]  Moreover, as recognized by the court in *Gingles*,

an at-large electoral scheme is one of the "electoral law[s], practice[s], or scheme[s]" that can

cause such inequality of opportunity for a minority voter.[48]  Second, a showing that Plaintiff

resides within an illustrative district that complies with prong 1 of *Gingles* demonstrates that the

harm suffered by the plaintiff is caused by the challenged electoral practice – Irving's at-large

system for electing its city council.[49]  Defendants' proffered authority does not hold otherwise.[50]

Third, the ability to draw an illustrative city council district in Irving that includes Plaintiff's

residence shows, obviously, that the requested remedy—a single-member system for electing the

members of Irving's city council—has the "*potential*" to address the harm of minority voter

---

[46] *See* Amended Complaint ¶¶ 18-21 [Pl. App. 5-6].

[47] *See Valdespino v. Alamo Heights Ind. Sch. Dist.*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995), *aff'd*, 105 F.3d 653 (table), No. 95-50719 (5th Cir. Dec. 12, 1996) (stating that a showing "that a single member district with a majority of Hispanic voters could be created satisfies the first element of standing – injury in fact") [Def. App. 33].

[48] *Gingles*, 478 U.S. at 47.

[49] *See id.* at 47 ("The essence of a § 2 claim is that a certain electoral flaw, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.) (underlining supplied) The Court explained that if a plaintiff in a section 2 challenge is not "sufficiently large and geographically compact to constitute a majority in a single-member district" then "the *multi-member form* of the district cannot be responsible for minority voters' inability to elect their candidates." *Id.* at 50 (italics in original, underlining added).

[50] *See Valdespino v. Alamo Heights Ind. Sch. Dist.*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) (unpublished decision) (stating that because "[p]laintiffs did not reside in the putative minority district," there is "no causal connection between their injury and the at-large election scheme") (underlining added) [Def. App. 33].

dilution.[51]   In sum, because Plaintiff resides within the area of a district that satisfies the

requirements of prong 1 of *Gingles*, he has established standing under *Lujan* to maintain the

instant suit or, at a minimum, has raised genuine issues of material fact as to whether he has

standing.  Accordingly, the Motion should be denied.

**B.** **Even If Plaintiff's Residence Were Outside The Area In Which An Illustrative District That Satisfied Prong 1 Of *Gingles* Could Be Drawn, Plaintiff Would Still Have Standing As He Would Be Able To Show Harm-In-Fact, Causation, And Redressability.**

Defendants wrongly contend that Plaintiff lacks standing because they erroneously allege

(also erroneously) that he resides outside of the area in which a *Gingles* 1 district can be drawn.[52]

As discussed above at Section V.A.1, a proposed district can be drawn to meet the conditions of

prong 1 of *Gingles* and also includes Plaintiff's place of residence.[53]  Even assuming, *arguendo*,

---

[51] *See Gingles*, at 50 n.17 (italics in original); *see also Valdespino*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) (stating that because plaintiffs resided "outside the putative minority district," "their injury would not be redressed by a favorable decision") [Def. App. 36].

[52] *See* Brief at 10.

[53] While Plaintiff is willing to assume, solely for the purposes of responding to Defendants' Motion, that Plaintiff must reside in one of the illustrative districts in order to have standing, it is nonetheless questionable whether *Valdespino* correctly interprets the Hays decision to apply to section 2 vote dilution cases, such as the instant case, that are governed by Gingles. As previously stated, the Court in *Gingles* explained that the purpose of prong 1 is to permit a plaintiff to demonstrate "the potential [of minority voters] to elect representatives in the absence of the challenged structure or practice." *Gingles*, 478 U.S. at 50 n.17 (italics in original).  Thus, under *Gingles*, plaintiffs in section 2 vote dilution cases who challenge at-large electoral districts present their illustrative districts merely to demonstrate that a majority-minority district with a "potential to elect" is feasible within the area covered by the challenged at-large electoral system. *Gingles*, 478 U.S. at 50 n.17 (italics in original).  Based on the facts before it, if the court hearing such section 2 vote dilution case determines that illegal dilution of minority voting power has occurred, it or a suitable legislative entity will then create a plan to remedy the vote dilution. *See, e.g., Shirt v. Hazeltine*, 461 F.3d 1011, 1017 (8th Cir. 2006) (affirming trial court's finding that redistricting plan diluted voting strength of Native Americans and deciding to order its own remedial plan when the South Dakota legislature refused to create one); *Clark v. Calhoun County*, 88 F.3d 1393, 1408 (5th Cir. 1996) (reversing judgment that county's voting district plan did not dilute the voting strength of black voters and remanding "to the district court to supervise

that Plaintiff's residence is outside the area in which an illustrative district could be drawn,

Plaintiff would still have standing because he could make the required showing under *Lujan*: an

injury-in-fact caused by the at-large system that is redressable by the remedy of a single-member

district electoral system.[54]

---

the development of a remedial plan"); *Goosby v. Town Bd.*, 956 F. Supp. 326, 356 (E.D.N.Y. 1997) (holding that town's system for electing members of its town board violated section 2 of the Voting Rights Act because it diluted the voting power of blacks and ordering town board "to submit to the Court a remedial plan that divides the Town into six single-member districts"). Significantly, there is no requirement that a court or legislative body tasked with drafting a remedial district place a plaintiff's residence within that remedial district. *See generally Gingles*, 480 U.S. 30. In light of the foregoing, a potential plaintiff with a valid vote dilution claims could be deterred from bringing an action against an illegal at-large electoral scheme if the holding in *Hays* were imposed in section 2 vote dilution cases because, under such a rule, a potential plaintiff would effectively be required to assess whether an illustrative district can be created that includes his own residence prior to bringing a lawsuit, or, at the very least, prior to any finding by a court that a remedial district must be created. Such unreasonable extra impediment to maintaining suit under section 2 is contrary to the purpose behind section 2 of the Voting Rights Act of permitting a plaintiff to challenge an illegal dilution of minority voters' electoral strength. In any event, as stated previously, there is no legal requirement that an actual remedial district include a plaintiff's residence. Moreover, the first precondition of *Gingles* is clearly a different legal standard from that of standing under *Lujan*, which turns on harm and redressability. *See infra* note 54. The Court in the *Valdespino* decision, however, conflated the issue of standing under Lujan and the first precondition of *Gingles* when it held that a plaintiff in a section 2 challenge must reside in a proposed district created pursuant to prong 1 of *Gingles* that has a majority of minority voters. *See Valdespino*, No. SA-94-CA-688 (W.D. Tex. Sept. 1, 1995) (unpublished decision) [Def. App. 35-36].

[54] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants agree that *Lujan* is the applicable standard to determine whether Plaintiff has standing. *See* Brief at 2. However, rather than analyzing Plaintiff's standing under *Lujan* to support their contention that Plaintiff lacks standing, Defendants rely on *Valdespino*, which relies on *Hays v. United States*, 515 U.S. 737 (U.S. 1995). *See id.* at 8-9 (Defendants contend, without any case law to support, that "[w]hile *Hays* arose under the Fourteenth Amendment rather than section 2 of the Voting Rights Act, the standing principles are the same."). Defendants' reliance on *Valdespino* is misplaced for the reasons set forth in n.53, *supra*. Defendants' reliance on *Hays* is also misplaced because *Hays* was a gerrymandering case dealing with a challenge to an existing and geographically defined single-member district allegedly drawn on the basis of race, in violation of the Equal Protection Clause of the U.S. Constitution. *See Hays*, 515 U.S. at 744-45 ("Where a plaintiff resides in a racially gerrymandered district, [plaintiff] . . . has standing to challenge the legislature's [gerrymander]."). In *Hays*, the Court determined that plaintiffs lacked standing to challenge a racial gerrymander because they did not live in the challenged district. *See id.* at 745

1.      **Injury-in-fact**

Even if Plaintiff does not reside within an illustrative district satisfying the requirements

of prong 1 of *Gingles*, he can still show the sort of direct harms to him from the dilutive effects

of Irving's at-large electoral system that confer standing in federal courts.   Specifically, Plaintiff

has introduced evidence in its expert reports that the City of Irving's at-large electoral system for

electing its council members dilutes minority voting strength.[55]   Due to this vote dilution, there is

little opportunity for Hispanic voters to select representatives of their choice.[56]   As a result,

---

("[W]here a plaintiff does not live in such a [challenged gerrymandered] district", he cannot
show the "special harms" that confer standing.).  *Hays* is inapposite to Plaintiff's situation in the
instant case because Plaintiff does reside in the challenged at-large district.   Moreover, the
Supreme Court has specifically stated that that a different analysis applies to dilution cases than
that applied in Gerrymander cases.  *See Shaw v. Reno,* 509 U.S. 630, 649-50 (1993) ("We have
considered the constitutionality of [at-large voting schemes] in other Fourteenth Amendment
cases and have required plaintiffs to demonstrate that the challenged practice has the purpose and
effect of diluting a racial group's voting strength.  At-large and multimember schemes, however,
do not classify voters on the basis of race.   Classifying citizens by race, as we have said,
threatens special harms that are not present in our vote-dilution cases.   It therefore warrants
different analysis.").

[55] *See* Report of Richard L. Engstrom, Ph.D., dated July 5, 2008 ("Engstrom Report"),
attached as Exhibit 1 to Declaration of Richard Engstrom, Ph.D. under 28 U.S.C. sec. 1746
("Engstrom Decl."), at 8-9 ("The results of the analyses of these elections [for city council and
mayor of Irving] indicate that voting in city council elections in Irving has been polarized
between Latinos and non-Latinos.   The Latino voters in all these elections preferred to be
represented by a Latino candidate.   This preference was not shared by the non-Latino voters in
any of the elections, who in effect vetoed the Latino voters' choices.") [Pl. App. 22-23]; Ely
Report at 9 ("My analysis demonstrates that it is possible to create a single member [city council]
district in the City of Irving in which Hispanics currently comprise a majority of eligible
voters.") [Pl. App. 101]; Ely Suppl. Report at 4 ("[T]here are multiple potential configurations of
a single member [city council] district in the City of Irving in which Hispanics … comprise a
majority of [citizen voting age population] in these districts in 2008.") [Pl. App. 63]; Ely Decl. ¶
6 ("I have developed an illustrative district that includes [Plaintiff's residence at] 2108 Meadow
Glen, [Irving, Texas] and has a Hispanic majority of [citizen voting age population].") [Pl. App.
52].

[56] *See* Engstrom Decl. ¶4 [Pl. App. 13]; *Gingles,* 478 U.S. at 47 ("The essence of a §2
claim is that a certain electoral law, practice, or structure interacts with social and historical
conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect

Plaintiff, as with other Hispanics allegedly residing out of the area of a possible Hispanic voter majority district, is denied the ability to participate in the electoral process in concrete ways quite apart from whether or not he has the opportunity to vote for a Hispanic candidate with a reasonable chance of prevailing.[57]   For example, Irving's dilutive electoral system deprives Plaintiff of the opportunity to participate in and influence the electoral process by working for the campaigns of, or contributing campaign funds to, candidates who appeal to a Hispanic constituency and who have a reasonable chance of prevailing in an election.[58]   Moreover, Plaintiff is deprived of the opportunity to raise matters or issues of concern to him with a representative elected from a Hispanic community of interest.[59]   These harms are more than sufficient to show harm-in-fact under the standard in *Lujan*.

2.      **Causation**

        Plaintiff can also show causation under the standard in *Lujan*.   There is an obvious causal connection between the City of Irving's dilutive electoral system for electing its City Council and all of the harms described above.   Irving's at-large electoral system deprives its Hispanic

_____

their preferred representatives.   This Court has long recognized that multimember districts and at-large voting schemes may operate to minimize or cancel out the voting strength of racial [minorities in] the voting population.") (citations omitted; bracketed material supplied by the court).

        [57] *See* Ely Decl. ¶ 10 [Pl. App. 53].

        [58] *See id.* ¶¶ 10-11 [Pl. App. 53].

        [59] *See id.* [Pl. App. 53]; *Gingles*, 478 U.S. at 44-45 (Approving use of "Senate Report" factors to assist the court in determining whether, because of a challenged electoral practice, minority "plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice" and stating that one such factor was whether "elected officials are unresponsive to the particularized needs of the members of the minority group.").

voters, such as Plaintiff, of the opportunity to vote for candidates of their choice.[60]   In addition, Irving's electoral system deprives Hispanics in Irving of access to representatives whose electoral success depends on appealing to an electorate that shares the concerns of the Hispanic community of interest in Irving.[61]   The connection between these harms and the City of Irving's electoral system is direct and requires little elaboration.

**3.**   <u>**Redressability**</u>

Finally, the remedy sought by Plaintiff, the creation of a single-member district with a Hispanic voting majority, would directly address the harms suffered by Plaintiff.[62]   For example, the requested remedy of a single-member electoral system with one predominantly Hispanic district addresses the harms caused by minority vote dilution in Irving because a council member elected from a predominantly Hispanic district (whether or not the representative is himself Hispanic) could be responsive to the specific issues of concern to the Hispanic community in

---

[60] *See id.* [Pl. App. 53]; Engstrom Decl. ¶ 4 [Pl. App. 13].   *See, e.g., Gingles*, 478 U.S. at 51 (stating that 'if the minority group is not cohesive it cannot be said that the selection of a multimember electoral structure thwarts distinctive minority group interests).   Plaintiff has introduced evidence of minority voter cohesion in Irving.   *See* Engstrom Decl. ¶ 4 [Pl. App. 13]; Engstrom Report at 8-9 [Pl. App. 22-23].

[61] *See* Ely Decl. ¶¶ 10-11 [Pl. App. 53].   *See, e.g., Gingles*, 478 U.S. at 51 (stating that 'if the minority group is not cohesive it cannot be said that the selection of a multimember electoral structure thwarts distinctive minority group interests).   Plaintiff has introduced evidence of minority voter cohesion in Irving.   *See* Engstrom Decl. ¶ 4 [Pl. App. 13]; Engstrom Report at 8-9 [Pl. App. 18].

[62] *See* Ely Decl. ¶ 11 [Pl. App. 53]; *Gingles*, 478 U.S. at 47 ("The essence of a §2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.   This Court has long recognized that multimember districts and at-large voting schemes may operate to minimize or cancel out the voting strength of racial [minorities in] the voting population.") (citations omitted; bracketed material supplied by the court).

Irving.[63]   Plaintiff, therefore, meets the requirement under *Lujan* to show that the requested remedy can redress the harms he suffers, or, at a minimum, has raised genuine issues of material fact as to whether he has standing.   Accordingly, Defendants' Motion should be denied.

## VI.

## CONCLUSION AND REQUEST FOR RELIEF

For all the foregoing reasons, Plaintiff requests that the Court deny Defendants' Motion in its entirety, and grant Plaintiff all other relief to which he is entitled.

---

[63] *See id.* [Pl. App. 53].

Respectfully submitted,

**BICKEL & BREWER STOREFRONT, PLLC**


By:/s/ Michael Veeser
    William A. Brewer III
    State Bar No. 2967035
    Michael L. Smith
    State Bar No. 24027989
    Wendy C. Wang
    State Bar. No. 24033433
    Michael Veeser
    State Bar No. 24042088

1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFF
MANUEL A. BENAVIDEZ**


## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2008, I submitted the foregoing document to the

Clerk of the Court for the U.S. District Court for the Northern District of Texas using the

electronic case filing system of the Court.  The electronic case filing system sent a "Notice of

Electronic Filing" to individuals who have consented in writing to accept this Notice as service

of this document by electronic means.

/s/ Michael Veeser
Michael Veeser